IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| RONALD D. AMON ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 3:11CV491–HEH |
| ) | |
| KAREN STUBBS *et al.*, ) | |
| ) | |
| Defendants. ) | |

### MEMORANDUM OPINION
(Defendants' Motion to Dismiss Complaint)

This is an action for money damages stemming from Plaintiff's arrest by officers of the City of Fredericksburg Police Department. Ronald D. Amon ("Plaintiff") originally filed this suit alleging a claim under 42 U.S.C. § 1983, as well as claims for assault and battery, malicious prosecution, and intentional infliction of emotional distress. On November 30, 2011, Plaintiff filed a motion to dismiss a number of the named defendants. Plaintiff also moved to dismiss his claims against the remaining defendants for malicious prosecution and intentional infliction of emotional distress, as well as the lack of probable cause allegations set forth in the residual claims. On December 2, 2011, the Court granted Plaintiff's Motion. Therefore, only portions of the § 1983 and assault and battery claims remain against defendants Karen Stubbs and Michael Purcell ("Defendants"). The matter is presently before the Court on Defendants' Motion to Dismiss Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. The parties have submitted memoranda of law in support of their respective positions. The Court

will dispense with oral argument because the facts and legal contentions are adequately presented in the materials presently before the Court and argument would not aid in the decisional process. For the reasons discussed herein, the motion will be granted.

I.

The events giving rise to this litigation center around an encounter between Plaintiff and Defendants, which allegedly occurred on September 11, 2008, and culminated in Plaintiff's arrest for the charge of abusing and neglecting an incapacitated adult in violation of Va. Code Ann. § 18.2-369. Prior to his arrest, Plaintiff lived with his mother, Margaret Amon ("Mrs. Amon"), and served as her primary caregiver. (Comp. at ¶ 13.) After a brief stay in the Bowling Green Nursing Home, Mrs. Amon returned to her home at the beginning of September, 2008. *Id.* at ¶¶ 19–22. According to Plaintiff, Mrs. Amon developed abrasions or sore spots as a result of being confined to a bed. On September 9, 2008, Plaintiff called a rescue squad to transport Mrs. Amon to the hospital because she was having difficulty breathing. *Id.* at ¶¶ 26–28. After arriving at the hospital, Plaintiff was questioned by hospital staff regarding the care of Mrs. Amon. As a result of Plaintiff's responses, former defendant Carol Hill, a hospital employee, allegedly reported suspicion of abuse and neglect to the Adult Protective Services and the Fredericksburg Police Department. *Id.* at ¶¶ 29–30.

In response to the report, Michael Buckley, an officer with the Fredericksburg Police Department visited the hospital and questioned Hill and Plaintiff on the evening of September 9, 2008. An Emergency Protective Order was then issued against Plaintiff. *Id.* at ¶¶ 31–33. On September 10, 2008, Plaintiff received a telephone message from

2

Defendant Karen Stubbs, a Fredericksburg police officer, requesting a meeting at the police department. Plaintiff alleges that he appeared at the police department later that day where he was interrogated by Defendants Stubbs and Purcell. The next day, a felony warrant was issued for Plaintiff's arrest. *Id.* at ¶¶ 34–35. According to Plaintiff, despite his lack of any prior criminal convictions, Defendant Stubbs determined that his arrest should "be treated as high-risk and requested the assistance of a significant number of additional officers, including, upon information and belief, members of the special equipment tactical team." *Id.* at ¶ 37.

Plaintiff claims that he returned home from work on the evening of September 11, 2008, and noticed "several suspicious vehicles in the [neighborhood], some of which appeared to be occupied." *Id.* at ¶ 39. After pulling into his driveway, Plaintiff asserts that he attempted to back down his driveway to "speak to the occupant of one of the vehicles." *Id.* At this point, a vehicle that had previously been parked down the street "drove at a high speed into the driveway and blocked the exit." *Id.* at ¶ 40. Police officer K.V. Harris, informed Plaintiff that he would ram his vehicle "as hard as he could" if Plaintiff did not stop. *Id.* at ¶ 42. Harris then exited the vehicle with his gun drawn and pointed at Plaintiff. In addition to Harris, Plaintiff alleges that a number of "unidentified strangers" wearing masks and brandishing weapons in a threatening manner arrested Plaintiff. *Id.* at ¶ 41. According to Plaintiff, Defendant Stubbs and Purcell were present on the scene, and neither took any action to intervene or prevent threats made to Plaintiff.

3

Pursuant to his arrest, Plaintiff remained in jail until September 20, 2008. According to the Complaint the Commonwealth ultimately requested a *nolle prosequi* of the felony charge. *Id.* at ¶¶ 46, 48.

## II.

Rule 8 of the Federal Rules of Civil Procedure provides that "a pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Traditionally, "[a] motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint. . . . [I]t does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992).

*Bell Atlantic Corp. v. Twombly* amplified the standard, noting that, to survive a motion to dismiss, a complaint must contain sufficient factual information to "state a claim to relief that is plausible on its face." 550 U.S. 544, 570 (2007). Although Rule 8 does not require "detailed factual allegations," it does demand that a plaintiff provide more than mere labels and conclusions stating that the plaintiff is entitled to relief. *Id.* at 555. As Judge Niemeyer noted in *Francis v. Giacomelli*, "naked assertions of wrongdoing necessitate some factual enhancement within the complaint to cross the line between possibility and plausibility of entitlement to relief." 588 F.3d 186, 193 (4th Cir. 2009) (internal quotation marks omitted).

Thus, a complaint containing facts that are "merely consistent with" a defendant's liability "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Twombly*, 550 U.S. at 557 (internal citation omitted). A complaint achieves

facial plausibility when it contains sufficient factual allegations to support a reasonable inference that the defendant is liable for the misconduct alleged. *Id.* at 556; *see also Ashcroft v. Iqbal*, 555 U.S. ___, 129 S. Ct. 1937, 1949 (2009). This analysis is context-specific and requires "the reviewing court to draw on its judicial experience and common sense." *Francis*, 588 F.3d at 193.

In short, the Court must assume the plaintiff's well-pleaded factual allegations to be true, and determine whether those allegations "plausibly give rise to an entitlement to relief." *Iqbal*, 129 S. Ct. at 1950.

### III.

Following Plaintiff's Stipulation of Partial Dismissal, two claims remain before this Court. First, Plaintiff asserts in Count I that Defendants violated his Fourth and Fourteenth Amendment rights by conducting an unreasonable arrest and seizure.[1] Plaintiff brings this claim against Defendants in both their official and individual capacities, alleging that the Defendants used an unreasonable and excessive amount of force in his arrest. Secondly, Plaintiff asserts a claim against Defendants under state law for assault and battery.

In response, Defendants argue that the Plaintiff's Complaint fails to state a Fourth Amendment claim for excessive force under § 1983, and Defendants are entitled to qualified immunity under the standard of objective reasonableness. (Defs.' Mot. Dismiss Pursuant to Fed. R. Civ. Pro. 12(b)(6) [hereinafter "Defs.' Mot."] at 14–15.) With

---

[1] Plaintiff concedes that his reference to the Fourteenth Amendment in Count I only applies to the incorporation of the Fourth Amendment's prohibitions against excessive force by state actors. (Pl.'s Mem. Resp. Defs.' Mot. Dismiss 13-14.)

5

respect to the assault and battery claim, Defendants contend that Plaintiff has failed to allege actionable injury. Furthermore, notwithstanding any requisite injury, Defendant maintains that Virginia law recognizes a legal justification for the use of reasonable force by police officers in performing their duties. *Id.* at 20–21.

The Court first turns to Plaintiff's Fourth Amendment claim filed against Defendants in their official capacity. Defendants argue, and Plaintiff fails to contradict, that official-capacity suits "generally represent only another way of pleading an action against an entity of which an officer is an agent." *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 690, n. 55, 98 S. Ct. 2018, 2035, n. 55 (1978). Consequently, so "long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *See Kentucky v. Graham*, 473 U.S. 159, 165 105 S. Ct. 3099, 3105 (1985).

Although Plaintiff has already stipulated to the dismissal of the City of Fredericksburg, the Court will consider the remaining official-capacity claims as, in effect, against the City of Fredericksburg. It is well established that municipal liability under 42 U.S.C. § 1983 may not be predicated solely upon a respondeat superior theory. *See Monell v. Department of Social Services*, 436 U.S. 658, 694, 98 S. Ct. 2018, 2037 (1978); *see also Milligan v. City of Newport News*, 743 F.2d 227, 229–30 (4th Cir. 1984). Liability arises only where the constitutionally offensive acts of city employees are taken in furtherance of some municipal "policy or custom." *Monell*, 436 U.S. at 694, 98 S. Ct. at 2037. Such a policy or custom may be found in edicts from the city's formal decision

making body or in "persistent ... practices of [municipal] officials" having the de facto force of law. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 167–68, 90 S. Ct. 1598, 1613–1614 (1970); *see also Languirand* v. Hayden, 717 F.2d 220, 222 (5th Cir. 1983). Absent a targeted decree, a policy or custom may be inferred in certain cases from continued inaction in the face of a known history of widespread constitutional deprivations on the part of city employees. *See Wellington v. Daniels*, 717 F.2d 932, 935 (4th Cir.1983).

Here, Plaintiff has failed to sufficiently allege any custom or policy promoting constitutionally offensive actions, nor has Plaintiff indicated widespread inaction sufficient to infer a constitutionally suspect custom. Plaintiff's Complaint merely states that Defendants "were acting in accordance with and pursuant to policies and procedures established by . . . [the] City of Fredericksburg. (Compl. at ¶ 55.) Absent any facts or additional details as to a specific delinquent policy, this facet of the Complaint cannot survive a motion to dismiss. For this reason, the Motion to Dismiss will be granted as to the claim in Count I against Defendants in their official capacity.

The Court next turns to the § 1983 claim against Defendants in their individual capacities. Traditionally, qualified immunity protects police officers performing discretionary duties from civil liability unless their conduct "violate[s] clearly established statutory or constitutional rights of which a reasonable person should have known." *Henry v. Purnell*, 501 F.3d 374, 377 (4th Cir. 2007). This defense may be properly raised in a motion to dismiss and "provides immunity from suit rather than a mere defense to liability." *Mitchell v. Forsyth*, 472 U.S. 511, 526, 105 S. Ct. 2806 (1985). This immunity from suit applies to police officers performing discretionary functions "unless

7

the officer's conduct violates a federal statutory or constitutional right, and the right was clearly established at the time of the conduct, such that an objectively reasonable officer would have understood that the conduct violated this right." *Milstead v. Kibler*, 243 F.3d 157, 161 (4th Cir. 2001).

The Court's first inquiry, accordingly, is whether, viewing the complaint in a light most favorable to Plaintiff, a constitutional violation has occurred.[2] In evaluating the application of qualified immunity to police officers in excessive force cases, the Court employs an objective standard to determine whether the officers acted reasonably under the circumstances they confronted. *Rowland v. Perry*, 41F.3d 167, 173 (4th Cir. 1994). The Court considers the sufficiency of the facts alleged in the complaint "from the perspective of a reasonable officer on the scene," and avoids judging the officer's conduct with the "20/20 vision of hindsight," recognizing that "police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving." *Jones v. Buchanan*, 325 F.3d 520, 527 (4th Cir.2003) (quoting *Graham v. Connor*, 490 U.S. 386, 396–97, 109 S. Ct. 1865 (1989)); *see also Waterman v. Batton*, 393 F.3d 471, 477 (4th Cir. 2005). The Court does not consider the officer's "intent or motivation." *Id.* (quoting *Elliott v. Leavitt*, 99 F.3d 640, 642 (4th Cir.1996)). Rather, "the question is whether a reasonable officer in the same circumstances would have concluded that a threat existed justifying the particular use of force." *Id.* (citing *Elliott*, 99 F.3d at 642). This calculus "requires a balancing of the nature and quality of

---

[2] As a preliminary matter, a defendant raising a qualified immunity defense must establish that he or she was acting within the scope of his or her official duties. *In re Allen*, 106 F.3d 582, 593–94 (4th Cir. 2007). In the present case this issue is not disputed.

8

the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Graham v. Connor*, 490 U.S. 386, 396, 109 S. Ct. 1865 (1989).

Contrary to Plaintiff's allegations, this Court finds from the face of the Complaint that Defendants did not engage in an unreasonable or excessive use of force in light of the circumstances before them. Therefore, Plaintiff has failed as a matter of law to state a claim for excessive force under the Fourth Amendment. *See Schultz v. Braga*, 455 F.3d 470, 477 (4th Cir. 2006) (stating that officer's actions are not excessive if they are objectively reasonable in light of the facts and circumstances confronting him). After obtaining a lawful warrant for his arrest, Plaintiff alleges that a group of strangers appeared in his driveway "[o]ut of nowhere," wearing masks with their weapons drawn. According to Plaintiff, these strangers, which included Defendants, blockaded the driveway, screamed at him, and brandished their weapons before "touching him repeatedly and placing him in handcuffs." (Compl. at ¶¶ 41–44.)

Plaintiff's Complaint fails to allege any other forcible conduct by Defendants. Moreover, Plaintiff cites no authority supporting the contention that blockading his automobile constitutes excessive force under the circumstances at hand. Although the Fourth Circuit has noted that in the context of traffic stops, "blockading an automobile and approaching a suspect with drawn weapons are extraordinary measures," the court continued to state that "such police procedures have been justified in [the Fourth] Circuit as a reasonable means of neutralizing potential danger to police and innocent bystanders." *United States v. Taylor*, 857 F.2d 210, 214 (4th Cir. 1998).

9

In the immediate case, the facts alleged in Plaintiff's Complaint evidence potential danger justifying such action. First, as conceded by Plaintiff, a felony arrest warrant had been issued for him on charges of abusing an elderly person resulting in serious bodily injury, in violation of Virginia state law. Second, Plaintiff explicitly admits that after pulling into his driveway, he then "put his Jeep into reverse and began to back down his driveway." Compl. at ¶¶ 39–40. Plaintiff claims he simply intended to investigate the strange vehicles in the neighborhood. However, from the objective view of an officer attempting to effectuate an arrest while insuring the safety of other officers, Plaintiff's actions could have easily been interpreted as an attempt to flee. In response, Defendants simply blockaded the driveway, drew their weapons, and ordered Plaintiff to cease his attempt to leave the premises—a perfectly reasonable use of force in response to the potential threat posed by Plaintiff.

Furthermore, Defendants accomplished the actual arrest of Plaintiff with little, if any, accompanying physical force according to his Complaint. While he alleges that Officer Harris "touched him repeatedly" and placed him in handcuffs, Plaintiff does not mention any physical injury suffered as a result of the force used during the arrest. His complaint cites only generic mental injuries—fear of strangers, mental anguish, shame, and discomfort. (Compl. at ¶ 49.) He does not assert that the Defendants secured the handcuffs too tightly or caused any other physical harm during his arrest. In fact, Plaintiff admits that Officer Harris, rather than Defendants physically placed him in the handcuffs. Regardless of who restrained Plaintiff, however, the act of handcuffing an arrestee cannot, without additional facts, form the basis of a complaint for the

unreasonable use of force. *Cooper v. City of Virginia Beach, Va.*, 817 F. Supp. 1310, 1315 (E.D. Va. 1993) ("[H]andcuffing [an] arrestee does not constitute unreasonable force.") (citation omitted). Here, there is simply no indication Defendants employed a level of force that was unjustified under the circumstances, as perceived by a reasonable officer. Accordingly, Defendants are entitled to immunity, and the Court will grant their motion to dismiss the Plaintiff's Fourth Amendment claim for excessive force under § 1983.

In addition to Plaintiff's constitutional claim, he also seeks damages from Defendants for assault and battery. Similar to the excessive force claim, Plaintiff alleges that Defendants used an unreasonable amount of force in effecting his arrest, and acted with conscious disregard to his rights, causing injury to Plaintiff. Again, however, Plaintiff only alleges vague mental injuries including fear of strangers, shame, and embarrassment. (Comp. at ¶¶ 61–63.)

Under Virginia law, "the tort of assault consists of an act intended to cause either harmful or offensive contact with another person or apprehension of such contact, and that creates in that other person's mind a reasonable apprehension of an imminent battery." *Koffman v. Garnett*, 265 Va. 12, 16, 574 S.E.2d 258 (2003). Battery is defined as a non-consensual, unwanted touching that is neither excused, nor justified. *Id.* A plaintiff's assault or battery claim, however, may be defeated by a legal justification for the act, and Virginia law recognizes a legal justification for the use of reasonable force by police officers to execute their lawful duties. *See, e.g., Pike v. Eubank*, 197 Va. 692, 90 S.E.2d 821 (1956). Consequently, where police officers employ reasonable force in the

execution of their lawful duties, they are immune from suit for such acts. As the Court has already concluded, Defendants' actions and the actions of the other officers were objectively reasonable under the circumstances, and therefore, legally justified. As a result, Defendants' Motion to Dismiss Count II is granted.

## IV.

For the reasons stated herein, Defendants' motion is granted, and the Court dismisses Plaintiff's Complaint in its entirety.

An appropriate Order shall accompany this Memorandum Opinion.

/s/
Henry E. Hudson
United States District Judge

Date: Dec 7, 2011
Richmond, VA

12